Case No. 25-60127

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

ARKANSAS PUBLIC SERVICE COMMISSION,
MISSISSIPPI PUBLIC SERVICE COMMISSION,
Petitioners

v.

FEDERAL ENERGY REGULATORY COMMISSION,
Respondent

consolidated with

No. 25-60208

CLEAN GRID ALLIANCE; ADVANCED POWER ALLIANCE; ADVANCED ENERGY UNITED; AMERICAN CLEAN POWER ASSOCIATION; SOLAR ENERGY INDUSTRIES ASSOCIATION,
Petitioners

v.

FEDERAL ENERGY REGULATORY COMMISSION,
Respondent

---

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

---

BRIEF OF PETITIONERS MISSISSIPPI PUBLIC SERVICE COMMISSION AND ARKANSAS PUBLIC SERVICE COMMISSION

---

William D. Booth
Alexander L. Peterson
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Avenue SW, Ste. 400
Washington, DC 20024
*Counsel for Mississippi Public Service Commission*

Bridgette M. Frazier
Arkansas Public Service Commission
1000 Center Street
Little Rock, AR 72201
Bridgette.Frazier@arkansas.gov
*Counsel for Arkansas Public Service Commission*

Case No. 25-60127

ARKANSAS PUBLIC SERVICE COMMISSION,
MISSISSIPPI PUBLIC SERVICE COMMISSION,

Petitioners

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent

consolidated with

No. 25-60208

CLEAN GRID ALLIANCE; ADVANCED POWER ALLIANCE; ADVANCED ENERGY UNITED; AMERICAN CLEAN POWER ASSOCIATION; SOLAR ENERGY INDUSTRIES ASSOCIATION,

Petitioners

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations

are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**I. Interested Persons.** The following are the parties and their counsel:

| **Petitioner:** | **Counsel for Petitioner:** |
|---|---|
| Mississippi Public Service Commission | William D. Booth<br>Michael Best & Friedrich LLP<br>1000 Maine Avenue SW, Ste. 400<br>Washington, DC 20024<br>wdbooth@michaelbest.com<br><br>Alexander L. Peterson<br>Michael Best & Friedrich LLP<br>1000 Maine Avenue SW, Ste. 400<br>Washington, DC 20024<br>alpeterson@michaelbest.com |
| Arkansas Public Service Commission | Bridgette M. Frazier<br>Arkansas Public Service Commission<br>1000 Center St.<br>Little Rock, AR 72201<br>Bridgette.Frazier@arkansas.gov |
| Clean Grid Alliance; Advanced Power Alliance; Advanced Energy Alliance; America Clean Power Association; Solar Energy Industries Association | Nicholas M. Gladd<br>Wilson, Sonsini Goodrich & Rosati<br>1700 K Street NW, Fifth Floor<br>Washington, D.C. 20006<br>ngladd@wsgr.com |

| | |
|---|---|
| | Steven G. Boughton<br>Wilson, Sonsini Goodrich & Rosati<br>1700 K Street NW, Fifth Floor<br>Washington, D.C. 20006<br>sboughton@wsgr.com |
| | Kelsey Catina<br>Wilson Sonsini Goodrich & Rosati<br>701 5th Avenue, Suite 5100<br>Seattle, WA 98104<br>kcatina@wsgr.com |
| American Clean Power Association | Gabriel L. Tabak<br>1299 Pennsylvania Avenue, N.W.<br>13th Floor<br>Washington, DC 20004<br>gtabak@cleanpower.org |
| **Respondent:** | **Counsel for Respondent:** |
| Federal Energy Regulatory Commission | Hon. Robert Solomon, Solicitor<br>Federal Energy Regulatory Commission<br>888 First Street, N.E.<br>Washington, DC 20426<br>robert.solomon@ferc.gov |
| | Robert Kennedy<br>Federal Energy Regulatory Commission<br>888 First Street, N.E.<br>Washington, DC 20426<br>robert.kennedy@ferc.gov |

Debbie-Anne Reese
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426
debbie-anne.reese@ferc.gov

| **Intervenor-Respondent:** | **Counsel for Intervenor-Respondent:** |
|---|---|
| Midcontinent Independent System Operator, Inc. | Christopher D. Supino<br>Midcontinent Independent System Operator, Inc.<br>720 City Center Drive<br>Carmel, IN 46032<br>csupino@misoenergy.org<br><br>Ilia Levitine<br>Duane Morris LLP<br>901 New York Ave., N.W.<br>Suite 700 East<br>Washington, D.C. 20001<br>Ilevitine@duanemorris.com |

| **Intervenor-Respondent:** | **Counsel for Intervenor-Respondent:** |
|---|---|
| MISO Transmission Owners | Wendy Reed<br>Wright & Talisman, P.C.<br>1200 G St. NW, Suite 600<br>Washington, D.C. 20005<br>reed@wrightlaw.com |

| **Intervenor-Respondent:** | **Counsel for Intervenor-Respondent:** |
|---|---|
| Southwest Power Pool Inc. | Matthew J. Binette<br>Wright & Talisman, P.C.<br>1200 G St. NW, Suite 600<br>Washington, D.C. 20005<br>binette@wrightlaw.com |
| | Vivian Chum<br>Wright & Talisman, P.C.<br>1200 G St. NW, Suite 600<br>Washington, D.C. 20005<br>chum@wrightlaw.com |

**Other Interested Parties:**[1]

| | |
|---|---|
| Alliant Energy Corporate Services, Inc. | Mary Emerson<br>Corporate Counsel<br>Alliant Energy Corporation<br>801 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>maryemerson@alliantenergy.com |
| | Dezirae Fisher<br>Legal and Public Affairs<br>Alliant Energy Corporate Services, Inc.<br>200 1st St. SE<br>Cedar Rapids, IA 52401<br>deziraefisher@alliantenergy.com |

[1] These parties are on the official service list for the agency proceedings below but have not intervened in the proceeding before this Court.

| | |
|---|---|
| | Cy McNeill<br>Federal Regulatory Relations<br>Alliant Energy Corporate Services, Inc.<br>801 Pennsylvania Ave. NW<br>Washington, DC 20004<br>cymcneill@alliantenergy.com |
| Ameren Services Company | Anne Dailey<br>Senior Corporate Counsel<br>Ameren Services Company<br>1331 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>adailey@ameren.com |
| | Kelly Shannon<br>Regulatory Affairs Specialist<br>Ameren Services Company<br>1331 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>kshannon@ameren.com |
| American Council on Renewable Energy | Elise Caplan<br>Director of Electricity Policy<br>American Council on Renewable Energy<br>1150 Connecticut Ave NW Ste. 401<br>Washington, DC 20036<br>caplan@acore.org |
| American Electric Power Service Corporation | Jessica Cano<br>Senior Counsel<br>AEP Service Corporation<br>1 Riverside Plaza<br>Columbus, OH 43215<br>jacano@aep.com |

Brandon Parmer
American Electric Power Company,
Inc.
1 Riverside Plaza
Columbus, OH 43215
bjparmer@aep.com

Adam Hickman
1 Riverside Plz. Fl 25
Columbus, OH 43215
ajhickman@aep.com

Richard Ross
Direct RTO Policy West
American Electric Power Service
Corporation
212 E 6th St
Tulsa, OK 74119
rross@aep.com

Doug Kouskouris
American Electric Power Company
1 Riverside Plz.
Columbus, OH 43215
dpkouskouris@aep.com

LaChon Turner
AEP Companies
801 Pennsylvania Ave. NW Ste. 735
Washington, DC 20004
lturner@aep.com

| | |
|---|---|
| Americans for a Clean Energy Grid | Christina Hayes<br>Executive Director, ACEG<br>Americans for a Clean Energy Grid<br>10 G St. NE Ste. 440<br>Washington, DC 20002<br>christina.hayes@cleanenergygrid.org |
| Arevon Energy, Inc. | Mike Gahimer<br>Arevon Energy, Inc.<br>14427 Salem Dr. E<br>Carmel, IN 46033<br>mgahimer@arevonenergy.com<br>Brindavani Malladi<br>Arevon Energy, Inc.<br>8800 N Gainey Center Dr.<br>Suite 100<br>Scottsdale, AZ 85258<br>bmalladi@arevonenergy.com |
| Association of Businesses Advocating Tariff Equity | Daniel Herder<br>Clark Hill P.L.C.<br>3200 N Central Ave. Ste. 160<br>Phoenix, AZ 85012<br>dherder@clarkhill.com<br><br>Michael Pattwell<br>Attorney<br>Clark Hill PLC<br>212 East Cesar E. Chavez Avenue<br>Lansing, MI 48906<br>mpattwell@clarkhill.com |

| | |
|---|---|
| Basin Electric Power Cooperative | Jesse Halpern<br>Thompson Coburn LLP<br>1909 K St. NW<br>Suite 600<br>Washington, DC 20006<br>jhalpern@thompsoncoburn.com<br><br>Nicole S. Allen<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DC 20006<br>nallen@thompsoncoburn.com<br><br>Jeremy Voll<br>Senior Electrical Engineer<br>Basin Electric Power Cooperative<br>1717 East Interstate Avenue<br>Bismarck, ND 58503<br>jvoll@bepc.com<br><br>Jecoliah Williams<br>Latham & Watkins LLP<br>555 Eleventh Street NW<br>Suite 1000<br>Washington, DC 20004<br>jecoliah.williams@lw.com<br><br>Mike Kraft<br>Basin Electric Power Cooperative<br>1717 E Interstate Ave.<br>Bismarck, ND 58503<br>mkraft@bepc.com |

| | |
|---|---|
| | Matthew R Kolling<br>Senior Staff Counsel<br>Basin Electric Power Cooperative<br>1717 East Interstate Avenue<br>Bismarck, ND 58503<br>mkolling@bepc.com |
| | J.P. Maddock<br>1717 E Interstate Ave<br>Bismarck, ND 58503<br>jpmaddock@bepc.com |
| | Jason Mazigian<br>1717 E INTERSTATE AVE<br>BISMARCK, ND 58503<br>jmazigian@bepc.com |
| | Rhonda Starck<br>Delivery Service Analyst<br>Basin Electric Power Cooperative<br>1717 E Interstate Ave<br>Bismarck, ND 58503<br>rstarck@bepc.com |
| Clean Grid Alliance | Rhonda Peters<br>InterTran Energy Consulting<br>1610 S Valentine Way<br>Lakewood, CO 80228<br>intertranec@gmail.com |
| Clean Wisconsin | Ciaran Gallagher<br>Clean Wisconsin<br>634 W Main St.<br>#300<br>Madison, WI 53703<br>cgallagher@cleanwisconsin.org |

| | |
|---|---|
| Coalition of MISO Transmission Customers | Kenneth Stark<br>McNees Wallace & Nurick LLC<br>100 Pine St.<br>Harrisburg, PA 17101<br>kstark@mcneeslaw.com<br><br>Robert A Weishaar, JR<br>McNees Wallace & Nurick LLC<br>1200 G Street, NW<br>Suite 800<br>Washington, DC 20005<br>bweishaar@mcneeslaw.com |
| Consumers Energy Company | Rachael Moore<br>Senior Attorney<br>Consumers Energy Company<br>One Energy Plaza<br>Jackson, MI 49201<br>rachael.moore@cmsenergy.com |
| Cooperative Energy | Matthew Rudolphi<br>Attorney<br>Thompson Coburn LLP<br>55 E Monroe St.<br>37th Floor<br>Chicago, IL 60603<br>mrudolphi@thompsoncoburn.com<br><br>Joshua E. Adrian<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DC 20006<br>jadrian@thompsoncoburn.com |

| | |
|---|---|
| | Nathan T Bellville<br>Regulatory Affairs Specialist<br>South Mississippi Electric Power Association<br>P.O. Box 15849<br>Hattiesburg, MS 39404-5849<br>nbellville@cooperativeenergy.com |
| Council of the City New Orleans | David Shaffer<br>Dentons US LLP<br>1900 K St. NW<br>Washington, DC 20006<br>david.shaffer@dentons.com |
| | Clinton A Vince<br>Dentons US LLP<br>1900 K Street, NW<br>Washington, DC 20005-2327<br>clinton.vince@dentons.com |
| | Presley Reed, JR<br>Partner<br>Dentons US LLP<br>1900 K St. NW,<br>Washington, DC 20006<br>presley.reedjr@dentons.com |
| | Jennifer Morrissey<br>Counsel<br>Dentons US LLP<br>1900 K Street NW<br>Washington, DC 20006<br>jennifer.morrissey@dentons.com |

Joseph W Rogers
President
Legend Consulting Group Limited
6041 S Syracuse Way Ste. 105
Greenwood Village, CO 80111
jrogers@legendcgl.com

Byron S Watson
Senior Consultant
Legend Consulting Group Limited
6041 S Syracuse Way Ste. 105
Greenwood Village, CO 80111
bwatson@legendcgl.com

Erin Spears
Chief of Staff, Council Utilit
Council of the City of New Orleans, Louisiana
1300 Perdido Street
Room 6E07
New Orleans, LA 70112
espears@nola.gov

Maxine Chatman
Sr. Paralegal
Dentons US LLP
1900 K Street, NW
Washington, DC 20006
maxine.chatman@dentons.com

EDF Renewables, Inc.

Michael Blackwell
Attorney
Husch Blackwell LLP
10700 Valley Dr.
Carmel, IN 46280
michael.blackwell@huschblackwell.com

Temujin J Roach
Senior Director - Transmission
EDF Renewables, Inc.
3600 American Blvd., W, Suite 400
Minneapolis, MN 55413
temujin.roach@edf-re.com

Anton Ptak
Director, Transmission and Int
EDF Renewables, Inc.
3600 American Blvd W Ste. 400
Bloomington, MN 55431
anton.ptak@edf-re.com

Emma Nix
Director, Transmission Policy
EDF Renewables Development, Inc.
2345 Bowen St.
Longmont, CO 80501
emma.nix@edf-re.com

Linda Walsh
Husch Blackwell LLP
750 17th Street NW
Washington, DC 200067
linda.walsh@huschblackwell.com

Corban Coffman
Akin Gump Strauss Hauer & Feld LLP
2001 K St. NW
Washington, DC 20006
ccoffman@akingump.com

| | |
|---|---|
| EDP Renewables North America LLC | Meredith Berger Chambers<br>Chief Legal Officer<br>EDP Renewables North America LLC<br>1501 McKinney Street<br>Houston, TX 77010<br>meredith.chambers@edp.com<br><br>David Mindham<br>EDP Renewables North America LLC<br>50748 Briar Ridge Ln.<br>Northville, MI 48168<br>david.mindham@edp.com |
| Entergy Arkansas, LLC | Jim Cunningham<br>Senior Counsel<br>Entergy Services, LLC<br>101 Constitution Avenue NW<br>Suite 200 East<br>Washington, DC 20001<br>jcunni7@entergy.com<br><br>Andrea J Weinstein, Esq.<br>VP. Federal Regulatory Affairs<br>Entergy Services, LLC<br>101 Constitution Ave. NW<br>Suite 200 East<br>Washington, DC 20001<br>aweinst@entergy.com |
| Entergy Louisiana, LLC | Jim Cunningham<br>Senior Counsel<br>Entergy Services, LLC<br>101 Constitution Avenue NW<br>Suite 200 East<br>Washington, DC 20001<br>jcunni7@entergy.com |

| | |
|---|---|
| | Andrea J Weinstein, Esq.<br>VP. Federal Regulatory Affairs<br>Entergy Services, LLC<br>101 Constitution Ave. NW<br>Suite 200 East<br>Washington, DC 20001<br>aweinst@entergy.com |
| Entergy Mississippi, LLC | Jim Cunningham<br>Senior Counsel<br>Entergy Services, LLC<br>101 Constitution Avenue NW<br>Suite 200 East<br>Washington, DC 20001<br>jcunni7@entergy.com<br><br>Andrea J Weinstein, Esq.<br>VP. Federal Regulatory Affairs<br>Entergy Services, LLC<br>101 Constitution Ave. NW<br>Suite 200 East<br>Washington, DC 20001<br>aweinst@entergy.com |
| Entergy New Orleans, LLC | Jim Cunningham<br>Senior Counsel<br>Entergy Services, LLC<br>101 Constitution Avenue NW<br>Suite 200 East<br>Washington, DC 20001<br>jcunni7@entergy.com |

| | |
|---|---|
| | Andrea J Weinstein, Esq.<br>VP. Federal Regulatory Affairs<br>Entergy Services, LLC<br>101 Constitution Ave. NW<br>Suite 200 East<br>Washington, DC 20001<br>aweinst@entergy.com |
| Entergy Services, LLC | Jim Cunningham<br>Senior Counsel<br>Entergy Services, LLC<br>101 Constitution Avenue NW<br>Suite 200 East<br>Washington, DC 20001<br>jcunni7@entergy.com |
| | Andrea J Weinstein, Esq.<br>VP. Federal Regulatory Affairs<br>Entergy Services, LLC<br>101 Constitution Ave. NW<br>Suite 200 East<br>Washington, DC 20001<br>aweinst@entergy.com |
| Entergy Texas, Inc. | Jim Cunningham<br>Senior Counsel<br>Entergy Services, LLC<br>101 Constitution Avenue NW<br>Suite 200 East<br>Washington, DC 20001<br>jcunni7@entergy.com |

| | |
|---|---|
| | Andrea J Weinstein, Esq.<br>VP. Federal Regulatory Affairs<br>Entergy Services, LLC<br>101 Constitution Ave. NW<br>Suite 200 East<br>Washington, DC 20001<br>aweinst@entergy.com |
| Environmental Law & Policy Center | Nicholas Wallace<br>Environmental Law & Policy Center<br>35 E Wacker Dr. Ste. 1600<br>Chicago, IL 60601<br>nwallace@elpc.org |
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | Patrick Smith<br>Corporate Counsel<br>Evergy, Inc.<br>818 S Kansas Ave.<br>Topeka, KS 66612<br>Patrick.Smith@evergy.com<br><br>Denise M Buffington<br>Sr Dir Federal Regulatory Affairs<br>Kansas City Power & Light Company<br>PO Box 418679<br>Kansas City, KS 64141-9879<br>Denise.Buffington@evergy.com<br><br>James Flucke<br>Manager, Federal Regulatory Affairs<br>1200 Main<br>Kansas City, MO 64105<br>jim.flucke@evergy.com |

| | |
|---|---|
| Fresh Energy | Michael Schowalter<br>Senior Policy Associate<br>Fresh Energy<br>408 St. Peter St.<br>Suite 350<br>Saint Paul, MN 55102<br>schowalter@fresh-energy.org |
| Illinois Industrial Energy Consumers | Eric Robertson<br>Senior Partner<br>Individual<br>1939 Delmar Ave<br>Po Box 735<br>Granite City, IL 62040<br>erobertson@lrklaw.com |
| International Transmission Company, et al. | James Bixby<br>Senior Counsel - Regulatory &<br>ITC Holdings Corp.<br>601 13TH St. NW Ste. 910S<br>Washington, DC 20005<br>jbixby@itctransco.com |
| Invenergy Solar Development North America LLC | Bruce Grabow<br>Sheppard Mullin Richter & Hampton LLP<br>2099 Pennsylvania Avenue, NW<br>Suite 100<br>Washington, DC 20006-6801<br>bgrabow@sheppardmullin.com |

| | |
|---|---|
| Invenergy Thermal Development LLC | Bruce Grabow<br>Sheppard Mullin Richter & Hampton LLP<br>2099 Pennsylvania Avenue, NW<br>Suite 100<br>Washington, DC 20006-6801<br>bgrabow@sheppardmullin.com |
| Invenergy Transmission LLC | Bruce Grabow<br>Sheppard Mullin Richter & Hampton LLP<br>2099 Pennsylvania Avenue, NW<br>Suite 100<br>Washington, DC 20006-6801<br>bgrabow@sheppardmullin.com |
| Invenergy Wind Development North America LLC | Bruce Grabow<br>Sheppard Mullin Richter & Hampton LLP<br>2099 Pennsylvania Avenue, NW<br>Suite 100<br>Washington, DC 20006-6801<br>bgrabow@sheppardmullin.com |
| Louisiana Energy Users Group | Carrie R Tournillon<br>Kean Miller LLP<br>909 Poydras St. Ste. 3600<br>New Orleans, LA 70112<br>carrie.tournillon@keanmiller.com<br><br>Gordon D Polozola, Esq.<br>Attorney<br>Kean Miller LLP<br>400 Convention St. Ste. 700<br>Baton Rouge, LA 70802<br>gordon.polozola@keanmiller.com |

| | |
|---|---|
| | Randy Young<br>Attorney<br>Kean Miller<br>PO Box 3513<br>Baton Rouge, LA 70821-3513<br>randy.young@keanmiller.com |
| Louisiana Public Service Commission | Dana Shelton<br>Attorney<br>Stone, Pigman, Walther, et al.<br>909 Poydras Street, Suite 3150<br>New Orleans, LA 70112-4042<br>dshelton@stonepigman.com |
| | Noel Darce<br>Attorney<br>Stone Pigman Walther Wittmann L.L.C.<br>909 Poydras St. Suite 3150<br>New Orleans, LA 70112-4042<br>ndarce@stonepigman.com |
| | Lane Sisung<br>United Professionals Co., LLC<br>201 St. Charles Avenue, Suite 4240<br>New Orleans, LA 70170<br>lane@sisung.com |
| | Justin Swaim<br>Attorney<br>Stone Pigman Walther Wittmann L.L.C.<br>909 Poydras St. Ste. 3150<br>New Orleans, LA 70112<br>jswaim@stonepigman.com |

| | |
|---|---|
| | Jake Chapman<br>United Professionals Company<br>The Sisung Group<br>201 Saint Charles Ave. Ste. 4240<br>New Orleans, LA 70170<br>jake@sisung.com |
| | Kathryn Bowman<br>Executive Counsel<br>Louisiana Public Service Commission<br>602 N 5th St.<br>Baton Rouge, LA 70802<br>kathryn.bowman@la.gov |
| | Julie Viviano<br>United Professionals Co., LLC<br>201 St. Charles Avenue, Suite 4240<br>New Orleans, LA 70170<br>julie@sisung.com |
| | Lauren Temento Evans<br>Deputy General Counsel<br>Louisiana Public Service Commission<br>PO Box 91154<br>Baton Rouge, LA 70821<br>Lauren.Evans@la.gov |
| LSP Transmission Holdings II, LLC | Michael R. Engleman<br>Engleman Fallon, PLLC<br>1717 K St. NW<br>Washington, DC 20006<br>mengleman@efenergylaw.com |

| | |
|---|---|
| | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VA 22209<br>ssegner@lspower.com |
| Minnesota Public Utilities Commission | Will Seuffert<br>Executive Secretary<br>Minnesota Public Utilities Commission<br>121 7th Place East, Suite 350<br>St. Paul, MN 55101<br>will.seuffert@state.mn.us |
| | Jean Coleman<br>General Counsel<br>Minnesota Public Utilities Commission<br>121 7th Pl. E Ste. 350<br>Saint Paul, MN 55101<br>jean.coleman@state.mn.us |
| | Lise B Trudeau<br>Regional Energy Program Superv<br>Minnesota Public Utilities Commission<br>121 7th Pl. E Ste. 350<br>Minnesota Public Utilities Commission<br>Saint Paul, MN 55101<br>Lise.B.Trudeau@state.mn.us |
| | Jacob D Strauss<br>Minnesota Public Utilities Commission<br>1812 Bryant Ave. S Apt. 11<br>Minneapolis, MN 55403<br>jacob.strauss@state.mn.us |

| | |
|---|---|
| Missouri Public Service Commission | John Borgmeyer<br>Litigation Attorney<br>Missouri Public Service Commission<br>PO Box 360<br>Jefferson City, MO 65102<br>john.borgmeyer@psc.mo.gov |
| | Jennifer Heintz<br>Missouri Public Service Commission<br>PO Box 360<br>Jefferson City, MO<br>jennifer.heintz@psc.mo.gov |
| | Karolin Walker, Esq.<br>Attorney<br>Missouri Public Service Commission<br>201 Madison St.<br>Jefferson City, MO 65101<br>karolin.walker@psc.mo.gov |
| | Jennie Wells<br>Paralegal<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, MO 65101<br>jennie.wells@psc.mo.gov |
| | Rodney Massman<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, MO 65101<br>Rodney.Massman@psc.mo.gov |

| | |
|---|---|
| | Valerie Groose<br>Missouri Public Service Commission<br>200 Madison St.<br>Jefferson City, MO 65101<br>valerie.groose@psc.mo.gov |
| | Jan Kay Davidson<br>Utility Policy Analyst I<br>Missouri Public Service Commission<br>200 Madison St.<br>Jefferson City, MO 65101<br>janette.davidson@psc.mo.gov |
| | Susan Doerhoff<br>Senior Research Analyst<br>Missouri Public Service Commission<br>200 Madison St.<br>Jefferson City, MO 65101<br>susan.doerhoff@psc.mo.gov |
| | Dana Sanson<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, MISSOURI 65101<br>dana.sanson@psc.mo.gov |
| Natural Resources Defense Council | Natalie McIntire<br>Natural Resources Defense Council<br>20 N Wacker, Suite 1600<br>Chicago, IL 60606<br>nmcintire@nrdc.org |

| | |
|---|---|
| Nebraska Public Power District | John McCaffrey<br>Partner<br>Stinson LLP<br>1775 Pennsylvania Avenue NW<br>Suite 800<br>Washington, DC 20006<br>john.mccaffrey@stinson.com<br><br>David D'Alessandro<br>Attorney<br>Stinson LLP<br>1775 Pennsylvania Avenue, Suite 800<br>Washington, DC 20006<br>david.dalessandro@stinson.com<br><br>Harold Hadland<br>Nebraska Public Power District<br>1414 15th Street<br>Columbus, NE 68601<br>hlhadla@nppd.com |
| NextEra Energy Resources, LLC | Katherine O'Konski<br>Senior Attorney<br>NextEra Energy, Inc.<br>801 Pennsylvania Ave NW Ste. 220<br>Washington, DC 20004<br>katherine.o'konski@nexteraenergy.com<br><br>Brittany S Rudd<br>NextEra Energy, Inc.<br>801 Pennsylvania Ave NW Ste. 220<br>Washington, DC 20004<br>brittany.rudd@nee.com |

| | |
|---|---|
| NIPSCO Large Customer Group | Joseph Rompala<br>Lewis & Kappes, P.C.<br>One American Square<br>Suite 2500<br>Indianapolis, IN 46282<br>jrompala@lewis-kappes.com |
| Oklahoma Gas and Electric Company | William Sultemeier<br>General Counsel and Chief Comp<br>OGE Energy Corp.<br>321 N Harvey Avenue<br>Oklahoma City, OK 73102<br>sultemwh@oge.com |
| | DeAnn M Aderholt<br>Oklahoma Gas and Electric Company<br>321 N. Harvey<br>P.O. Box 321 M/C 1208<br>Oklahoma City, OK 73101<br>aderhodm@oge.com |
| | Dominic D. Williams<br>Senior Attorney, Manager Legal<br>Oklahoma Gas and Electric Company<br>321 N Harvey Ave.<br>M/C 1208<br>Oklahoma City, OK 73102<br>williado@oge.com |
| | Emily C. Shuart<br>Oklahoma Gas and Electric Company<br>321 N Harvey Ave.<br>Oklahoma City, OK 73102<br>shuartec@oge.com |

| | |
|---|---|
| Omaha Public Power District | Collin Sniff<br>Energy Regulatory Policy Manag<br>Omaha Public Power District<br>444 S 16th Street Mall<br>Omaha, NE 68102<br>cjsniff@oppd.com<br><br>Sarah T Caswell<br>Sr. Energy Regulatory and Poli<br>444 S 16th Street Mall<br>Omaha, NE 68102<br>stcaswell@oppd.com |
| Organization of MISO States, Inc. | Brad Pope<br>Direct. of Legal and Reg. Affairs<br>Organization of MISO States, Inc.<br>811 E. Washington Avenue<br>Suite 400<br>Madison, WI 53703<br>brad@misostates.org<br><br>Tricia DeBleeckere<br>Executive Director<br>Organization of MISO States, Inc.<br>811 E. Washington, Suite 400<br>Madison, WI 53703<br>tricia@misostates.org |
| Orsted Wind Power North America LLC | Lopa Parikh<br>Head of Electricity Policy<br>Orsted North America Inc.<br>1225 New York Ave. NW Ste. 550b<br>Washington, DC 20005<br>lpari@orsted.com |

| | |
|---|---|
| Otter Tail Power Company | Robert Endris<br>Associate General Counsel<br>215 S. Cascade Street<br>Fergus Falls, MN 56537<br>rendris@otpco.com<br><br>Stacie M Hebert<br>Manager FERC/RTO Policy<br>Otter Tail Power Company<br>215 S Cascade St.<br>Fergus Falls, MN 56537<br>shebert@otpco.com |
| Pine Gate Renewables, LLC | Regan Fink<br>Pine Gate Renewables, LLC<br>130 Roberts St.<br>Asheville, NC 28801<br>rfink@pgrenewables.com |
| Public Citizen, Inc | Tyson Slocum<br>Energy Program Director<br>Public Citizen, Inc.<br>215 Pennsylvania Ave. SE<br>Washington, DC 20003<br>tslocum@citizen.org |
| Public Utility Commission of Texas | Debra Roby<br>Partner<br>Washington Energy Law LLP<br>900 17th Street NW<br>Suite 500-A<br>Washington, DC 20006<br>droby@washingtonenergylaw.com |

| | |
|---|---|
| | Alan Robbins<br>Partner<br>Washington Energy Law LLP<br>900 17th St. NW Ste. 500-A<br>Washington, DC 20006<br>arobbins@washingtonenergylaw.com |
| | Thomas Steiger<br>Associate<br>Washington Energy Law LLP<br>900 17th Street NW<br>Suite 500-A<br>Washington, DC 20006<br>tsteiger@washingtonenergylaw.com |
| Renew Missouri Advocates | Emily Piontek<br>Renew Missouri Advocates<br>915 E Ash St.<br>Columbia, MO 65201<br>emily@renewmo.org |
| Savion, LLC | Joseph Hall<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Ste. 700<br>Washington, DC 20001-3980<br>joehall@eversheds-sutherland.com |
| | Roxane E. Maywalt<br>Senior Counsel<br>Eversheds Sutherland (US)LLP<br>700 6th St. NW Ste. 700<br>Washington, DC 20001<br>RoxaneMaywalt@eversheds-sutherland.com |

| | |
|---|---|
| | Kerim P May<br>Eversheds Sutherland (US) LLP<br>700 6th St. NW Ste. 700<br>Washington, DC 20001<br>KerimMay@eversheds-sutherland.com |
| | Derek E Sunderman<br>Vice President Transmission<br>Savion, LLC<br>422 Admiral Blvd<br>Kansas City, MO 64106<br>dsunderman@savionenergy.com |
| Shell Energy North America (U.S.), L.P. | Joseph Hall<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Ste. 700<br>Washington, DC 20001-3980<br>joehall@eversheds-sutherland.com |
| | Roxane E. Maywalt<br>Senior Counsel<br>Eversheds Sutherland (US)LLP<br>700 6th St. NW Ste. 700<br>Washington, DC 20001<br>RoxaneMaywalt@eversheds-sutherland.com |
| | Kerim P May<br>Eversheds Sutherland (US) LLP<br>700 6th St. NW Ste. 700<br>Washington, DC 20001<br>KerimMay@eversheds-sutherland.com |

| | |
|---|---|
| | Matthew J. Picardi, Esq.<br>Vice President<br>Shell Energy North America (US), L.P.<br>36 Pinewood Ave.<br>Saratoga Springs, NY12866<br>Matthew.Picardi@shell.com |
| Shell New Energies US, LLC | Joseph Hall<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Ste. 700<br>Washington, DC 20001-3980<br>joehall@eversheds-sutherland.com |
| | Roxane E. Maywalt<br>Senior Counsel<br>Eversheds Sutherland (US)LLP<br>700 6th St, NW Ste. 700<br>Washington, DC 20001<br>RoxaneMaywalt@eversheds-sutherland.com |
| | Kerim P May<br>Eversheds Sutherland (US) LLP<br>700 6th St. NW Ste. 700<br>Washington, DC 20001<br>KerimMay@eversheds-sutherland.com |
| | Matthew J. Picardi, Esq.<br>Vice President<br>Shell Energy North America (US), L.P.<br>36 Pinewood Ave.<br>Saratoga Springs, NY 12866<br>Matthew.Picardi@shell.com |

| | |
|---|---|
| Sierra Club | Gregory Wannier<br>Senior Attorney<br>Sierra Club<br>Environmental Law Program<br>2101 Webster Street<br>Suite 1300<br>Oakland, CA 94612<br>greg.wannier@sierraclub.org<br><br>Justin Vickers<br>Senior Attorney<br>Sierra Club<br>Environmental Law Program<br>1229 W. Glenlake Ave.<br>Chicago, IL 60660<br>justin.vickers@sierraclub.org |
| Spearmint Renewable Development Company, LLC | Gregory Jones<br>Paul Hastings LLP<br>2050 M Street, NW<br>Washington, DC 20036<br>gregoryjones@paulhastings.com<br><br>Sophia Faram<br>Paul Hastings LLP<br>2050 M St. NW<br>Washington, DC 20036<br>sophiafaram@paulhastings.com |
| Sunflower Electric Power Corporation | Adrienne Clair<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DC 20006<br>aclair@thompsoncoburn.com |

| | |
|---|---|
| | Griffin C. Rice<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DC 20006<br>grice@thompsoncoburn.com |
| | Ala Tamimi<br>Senior VP and Chief Operating<br>Sunflower Electric Coop Inc (KS)<br>425 S 119th St. W<br>Wichita, KS 67235<br>ATamimi@sunflower.net |
| | Ray Bergmeier<br>Manager of Transmission Policy<br>425 S 119th St. W<br>Wichita, KS 67235<br>RBergmeier@sunflower.net |
| Sustainable FERC Project | John Moore<br>Senior Attorney<br>Sustainable FERC Project<br>2 N Riverside Plz Ste 2250<br>RTS-RETURN TO SENDER<br>Chicago, IL 60606-2640<br>moore.fercproject@gmail.com |
| Texas Industrial Energy Consumers | John Hubbard<br>O'Melveny & Myers LLP<br>303 Colorado St. Ste. 2750<br>Austin, TX 78701<br>jhubbard@omm.com |

| | |
|---|---|
| | Kellie Balli<br>Paralegal<br>O'Melveny & Meyers LLP<br>303 Colorado St. Ste. 2750<br>Austin, Texas 78701<br>kballi@omm.com |
| | Katherine Coleman<br>Attorney<br>O'Melveny & Meyers LLP<br>303 Colorado St.<br>Suite 2750<br>Austin, TX 78701<br>kcoleman@omm.com |
| Union Of Concerned Scientists | Samuel Gombeg<br>Senior Energy Analyst<br>Union of Concerned Scientists<br>1825 K St. NW<br>#800<br>Washington, DC 20001<br>sgomberg@ucsusa.org |
| Upper Michigan Energy Resources Corporation | Conor Ward<br>Senior Corporate Counsel<br>WEC Energy Group, Inc.<br>231 W. Michigan Street<br>A292<br>Milwaukee, WI 53203<br>conor.ward@wecenergygroup.com |
| | Sarah Londo<br>WEC Energy Group<br>231 W Michigan Street<br>Milwaukee, WI 53203<br>sarah.londo@wecenergygroup.com |

| | |
|---|---|
| Western Area Power Administration | Evan Bekkedahl<br>Attorney<br>Western Area Power Administration<br>Office of General Counsel<br>12155 W. Alameda Parkway<br>Lakewood, CO 80228<br>bekkedahl@wapa.gov<br><br>Steven C. Sanders<br>Strategic Electric Industry<br>Western Area Power Administration<br>Upper Great Plains Region<br>2900 4th Ave North, Room 600<br>Billings, MO 59101-5800<br>sanders@wapa.gov |
| Western Farmers Electric Cooperative | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700<br>Washington, DC 20001-3980<br>DanielFrank@eversheds-sutherland.com<br><br>Allison Salvia<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Suite 700<br>Washington, DC 20001<br>AllisonSalvia@eversheds-sutherland.com |

| | |
|---|---|
| WIRES | Pauline Foley<br>Contractor<br>WIRES<br>529 14th St. NW Ste. 1280<br>Washington, DC 20045<br>pfoley@wiresgroup.com |
| | Larry Gasteiger<br>Executive Director<br>WIREs<br>529 14th St. NW Ste. 1280<br>Washington, DC 20045<br>lgasteiger@exec.wiresgroup.com |
| Wisconsin Electric Power Company | Conor Ward<br>Senior Corporate Counsel<br>WEC Energy Group, Inc.<br>231 W. Michigan Street<br>A292<br>Milwaukee, WI53203<br>conor.ward@wecenergygroup.com |
| | Sarah Londo<br>WEC Energy Group<br>231 W Michigan Street<br>Milwaukee, WI 53203<br>sarah.londo@wecenergygroup.com |
| Wisconsin Public Service Corporation | Conor Ward<br>Senior Corporate Counsel<br>231 W. Michigan Street<br>A292<br>Milwaukee, WI 53203<br>conor.ward@wecenergygroup.com |

Sarah Londo
231 W Michigan Street
Milwaukee, WI 53203
sarah.londo@wecenergygroup.com

/s/ William D. Booth
William D. Booth
*Attorney of record for Mississippi Public Service Commission*

## STATEMENT REGARDING ORAL ARGUMENT

In accordance with Circuit Rule 28.2.3 and Fed. R. App. P. 34(a)(1), Petitioners Mississippi Public Service Commission ("Mississippi") and Arkansas Public Service Commission ("Arkansas") submit that oral argument would aid the Court's disposition of this case, in particular to address any technical industry questions the Court may have.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................... i

STATEMENT REGARDING ORAL ARGUMENT .................... xxxix

TABLE OF CONTENTS .................... xl

TABLE OF AUTHORITIES .................... xlii

JURISDICTIONAL STATEMENT .................... 1

STATEMENT OF THE ISSUES .................... 4

STATEMENT OF THE CASE .................... 4

I. Background .................... 4

II. Transfer Capability Between MISO Subregions .................... 8

III. MVP Subregional Cost Allocation .................... 10

IV. The JTIQ Framework .................... 13

A. JTIQ Portfolio #1 .................... 13

B. Cost Allocation .................... 15

V. Procedural History of the JTIQ Framework .................... 17

SUMMARY OF THE ARGUMENT .................... 21

STANDARD OF REVIEW .................... 22

ARGUMENT .................... 24

I. FERC Failed to Establish with Substantial Evidence that JTIQ Portfolio #1 Will Benefit MISO South Customers. .................... 24

II. FERC Deviated from Its Precedent Without a Reasoned Explanation by Finding that JTIQ Portfolio #1 Benefits MISO South Customers. .................... 30

III. FERC Violated Its Long-Standing Cost Causation Principle by Allocating Backstop Costs of JTIQ Portfolio #1 to MISO South Customers. ....................35

CONCLUSION ....................38

CERTIFICATE OF SERVICE ....................40

CERTIFICATE OF COMPLIANCE ....................41

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allegheny Def. Project v. FERC*,
964 F.3d 1 (D.C. Cir. 2020) ........ 3

*Ariz. Pub. Serv. Co. v. United States*,
742 F.2d 644 (D.C. Cir. 1984) ........ 25

*Biestek v. Berryhill*,
587 U.S. 97 (2019) ........ 24

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156 (1962) ........ 23

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ........ 24

*El. Paso Elec. Co. v. FERC*,
76 F.4th 352 (5th Cir. 2023) ........ 35, 36

*El. Paso Elec. Co. v. FERC*,
832 F.3d 495 (5th Cir. 2016) ........ 22

*FCC v. Fox TV Stations, Inc.*,
556 U.S. 502 (2009) ........ 30

*Fred Bevs., Inc. v. Fred's Cap. Mgmt. Co.*,
605 F.3d 963 (Fed. Cir. 2010) ........ 30, 34

*Ill. Com. Comm'n v. FERC*,
576 F.3d 470 (7th Cir. 2009) ........ 22, 36

*K N Energy, Inc. v. FERC*,
968 F.2d 1295 (D.C. Cir. 1992) ........ 35

*La. Pub. Serv. Comm'n v. FERC*,
771 F.3d 903 (5th Cir. 2014) ........ 22

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................23

*N. States Power Co. v. FERC*,
30 F.3d 177 (D.C. Cir. 1994)....................27

*Nantahala Power & Light Co. v. Thornburg*,
476 U.S. 953 (1986)....................5

*Nat'l Tel. Coop. Ass'n v. FCC*,
563 F.3d 536 (D.C. Cir. 2009)....................24

*Old Dominion Elec. Coop. v. FERC*,
898 F.3d 1254 (D.C. Cir. 2018)....................35

*Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*,
893 F.3d 1017 (7th Cir. 2018)....................24, 29

*Town of Norwood v. FERC*,
962 F.2d 20 (D.C. Cir. 1992)....................28

*Verizon v. FCC*,
740 F.3d 623 (D.C. Cir. 2014)....................24

**ADMINISTRATIVE ORDERS**

*Midwest Indep. Transmission Sys. Operator, Inc.*,
133 FERC ¶ 61,221 (Dec. 16, 2010), *order on reh'g*,
137 FERC ¶ 61,074 (Oct. 21, 2011), *aff'd sub nom.*
*Ill. Com. Comm'n v. FERC*, 721 F.3d 764 (7th Cir. 2013) ....................10

*Midwest Indep. Transmission Sys. Operator, Inc.*
136 FERC ¶ 61,010 (July 1, 2011)....................8

*Midcontinent Indep. Sys. Operator, Inc.*,
154 FERC ¶ 61,021 (Jan. 21, 2016) ....................9

*Midcontinent Indep. Sys. Operator, Inc.*,
179 FERC ¶ 61,124 (May 18, 2022).................... passim

*Midcontinent Indep. Sys. Operator, Inc.*,
181 FERC ¶ 61,219 (Dec. 16, 2022) ........................................................7

*Midcontinent Indep. Sys. Operator, Inc., et. al.*,
189 FERC ¶ 61,108 (Nov. 13, 2024) ........................................................2, 3, 19

*Midcontinent Indep. Sys. Operator, Inc.*,
190 FERC ¶ 62,015 (Jan. 13, 2025) ........................................................2

*Midcontinent Indep. Sys. Operator, Inc.*,
191 FERC ¶ 61,231 (June 26, 2025) ........................................................passim

*Tenn. Power Co.*,
90 FERC ¶ 61,238, 61,761 (Mar. 15, 2000)........................................................13

*Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.*,
Order No. 1000,
136 FERC ¶ 61,051, P 622 (July 21, 2011), *order on reh'g*,
Order No. 1000-A,
139 FERC ¶ 61,132, *order on reh'g and clarification*,
Order No. 1000-B,
141 FERC ¶ 61,044 (Oct. 18, 2012), *aff'd sub nom.*
*S.C. Pub. Serv. Auth. v. FERC*,
762 F.3d 41 (D.C. Cir. 2014)........................................................17, 22, 36

**STATUTES**

5 U.S.C. § 706(2)(A) ........................................................23

5 U.S.C. § 706(2)(E)........................................................23

16 U.S.C. § 824(b)(1) ........................................................5, 35

16 U.S.C. § 824d(a) ........................................................5, 35

16 U.S.C. § 825*l*(a)........................................................3

16 U.S.C. § 825*l*(b)........................................................1, 20, 23

42 U.S.C. § 7172(a)(1)(B) ........................................................35

Administrative Procedure Act .............................................................. passim

Ark. Code Ann. § 23-2-304.....................................................................4

Ark. Code Ann. § 23-4-201(a)(1) ..........................................................4

Federal Power Act................................................................................ passim

Miss. Code Ann. § 77-3-5 .....................................................................5

Miss. Code Ann. § 77-3-33 ...................................................................5

**OTHER AUTHORITIES**

18 C.F.R. § 385.713 (2024) ..................................................................3

Amanda Durish Cook, *MISO Interconnection Queue Drops to 215 GW on Tax Incentive Phaseout*, RTO Insider (Sep. 17, 2025), https://www.rtoinsider.com/115081-miso-interconnection-queue-drops-to-215gw-tax-incentive-phaseout/ .......................................38

Amanda Durish Cook, *MISO Custs Renewable Estimates in Tx Planning Scenarios*, RTO Insider (Sep. 24, 2025), https://www.rtoinsider.com/115667-miso-cuts-renewable-estimates-tx-planning-scenarios/#/ .........................................................38

John Cropley & Tom Kleckner, *DOE Terminates $7.56B in Energy Grants for Projects in Blue States*, RTO Insider (Oct. 7, 2025), https://www.rtoinsider.com/116314-doe-terminates-756b-energy-grants-blue-states/ ...................................................................37

One Big Beautiful Bill Act, Pub. L. No. 119-21, § 70512, 139 Stat. 72, 252 (2025) ..................................38

One Big Beautiful Bill Act, Pub. L. No. 119-21, § 70513, 139 Stat. 72, 270 (2025) ..................................38

William Shakespeare, *Romeo and Juliet*, act II, sc. 2 .........................................34

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to Section 313(b) of the Federal Power Act ("FPA"), 16 U.S.C. § 825*l*(b). Under that provision, a petitioner must file a petition for review "within sixty days after the order . . . upon the application for rehearing." *Id.*

Petitioners instituted this proceeding by timely filing a petition for review of final orders issued by the Federal Energy Regulatory Commission ("FERC"). Petitioners properly sought review of FERC's orders in this Court because Petitioner Mississippi Public Service Commission has its principal place of business within this Court's jurisdiction. *See* 16 U.S.C. § 825*l*(b) ("Any party to a proceeding under [the FPA] aggrieved by an order issued by [FERC] . . . may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business . . . .").

The orders under review approved revisions to[2] (i) the Midcontinent Independent System Operator, Inc. ("MISO") Open Access Transmission, Energy, and Operating Reserve Markets Tariff ("MISO Tariff"); (ii) the Southwest Power Pool, Inc. ("SPP") Open Access Transmission Tariff ("SPP Tariff"); and (iii) the MISO-SPP Joint Operating Agreement ("Joint Agreement") to implement the Joint Targeted Interconnection Queue ("JTIQ") framework between MISO and SPP. The underlying administrative proceeding contains three decisions by FERC; the first is an initial order accepting the JTIQ framework. *Midcontinent Indep. Sys. Operator, Inc., et. al.*, 189 FERC ¶ 61,108 (Nov. 13, 2024) (the "November 13 Order").[3] The second and third are orders effectuating the denial of rehearing by operation of law and providing for further consideration of rehearing requests. *See Midcontinent Indep. Sys. Operator, Inc.,* Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 190 FERC ¶ 62,015 (Jan. 13, 2025) (the "Rehearing Denial

[2] The parties have agreed to cite FERC orders, including the challenged orders, as "Shortname P [Paragraph Number]." The parties have further agreed to cite all other original-record documents as "R.[Record Item Number in Respondents Certified Index]:[Page Number of the Document]." The parties have agreed to cite these documents by their overall PDF page number, even when the document has internal pagination.
[3] *See* R.148.

Order")[4] and *Midcontinent Indep. Sys. Operator, Inc.*, Order Addressing Arguments Raised on Rehearing, 191 FERC ¶ 61,231 (June 26, 2025) (the "Further Consideration Order").[5]

Petitioners timely intervened[6] and protested[7] MISO's implementation of the JTIQ framework. In the November 13 Order, FERC accepted the JTIQ framework, and Petitioners filed a timely request for rehearing.[8] FERC did not act on the rehearing request within thirty days, causing the rehearing request to be deemed denied by operation of law. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2024); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc). FERC issued the Further Consideration Order addressing Petitioners' rehearing request and upholding its decision in the November 13 Order. These three orders constitute final action by FERC on the JTIQ framework. Petitioners timely petitioned the Court for review of the Rehearing Denial Order on March 13, 2025 and amended its Petition to address the Further Reconsideration Order on August 14, 2025.

---

[4] *See* R.156.
[5] *See* R.166.
[6] *See* R.6 (Mississippi Notice of Intervention); R.80 (Arkansas Motion to Intervene).
[7] *See* R.137 (Mississippi Protest); R. 136 (Arkansas Comments).
[8] *See* R.149 (Petitioners' Request for Rehearing).

## STATEMENT OF THE ISSUES

1. Whether FERC violated the Administrative Procedure Act ("APA") and FPA by failing to establish with substantial evidence its finding that JTIQ Portfolio #1 will benefit MISO South customers.

2. Whether FERC violated the APA by deviating from applicable precedent, without a reasoned explanation, by holding that new high-voltage transmission facilities located in MISO Midwest meaningfully benefit MISO South customers.

3. Whether FERC violated its long-standing "cost causation principle" by allocating backstop costs of JTIQ Portfolio #1 to MISO South customers.

## STATEMENT OF THE CASE

### I. Background

Petitioners Mississippi and Arkansas are state agencies responsible for assuring that public utilities in their respective states provide adequate electric service to retail customers at reasonable rates.[9] Petitioners,

[9] *See* Ark. Code Ann. § 23-4-201(a)(1) ("The Arkansas Public Service Commission is vested with the sole and exclusive jurisdiction and authority to determine the rates to be charged for each kind of product or service to be furnished or rendered by electric, gas, telephone, or sewer public utilities in Arkansas."); Ark. Code Ann. § 23-2-304 (vesting the Arkansas Public Service Commission with the power to fix just and reasonable

however, do not have jurisdiction to regulate wholesale electricity rates – Congress granted such authority to FERC. *See* 16 U.S.C. § 824(b)(1) (the FPA applies to "the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce…"). Petitioners also cannot prevent the public utilities they regulate from passing through a FERC-approved wholesale electric rate to their retail customers. *See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986) ("Once FERC sets [a wholesale] rate, a State may not conclude in setting retail rates that the FERC-approved wholesale rates are unreasonable. A state must rather give effect to Congress' desire to give FERC plenary authority over interstate wholesale rates, and to ensure that the States do not interfere with this authority."). Petitioners therefore rely on FERC to set just and reasonable wholesale rates. *See* 16 U.S.C. § 824d(a) ("All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy

utility rates); Miss. Code Ann. § 77-3-5 (vesting the Mississippi Public Service Commission with exclusive original jurisdiction to establish retail utility rates in the state); Miss. Code Ann. § 77-3-33 (requiring that public utility rates be just and reasonable).

subject to the jurisdiction of the Commission … shall be just and reasonable”).

FERC is the Respondent that issued the challenged orders arising from a MISO rate proposal. MISO is a FERC-approved Regional Transmission Organization (“RTO”) responsible for operating the electric grid and administering wholesale electricity markets within a fifteen-state footprint in the central United States, including Arkansas and Mississippi.

MISO collaborated with SPP, a neighboring RTO, to create the JTIQ framework that led to this Petition. MISO’s footprint is split into two subregions – MISO Midwest and MISO South. *Midcontinent Indep. Sys. Operator, Inc.*, 179 FERC ¶ 61,124, P 125 (May 18, 2022) (“2022 Initial MVP Order”). Exhibit A below illustrates the MISO Midwest and South subregions:




MISO's footprint was originally the MISO Midwest subregion. *Id.* P 134. In 2013, MISO's footprint "significantly expanded when the Entergy Operating Companies and certain other [utilities] located in Arkansas, Mississippi, Louisiana, and Texas joined and MISO took over operational control of their transmission systems." *See Midcontinent Indep. Sys. Operator,*

*Inc.*, 181 FERC ¶ 61,219 P 7 (Dec. 16, 2022) ("2022 MVP Rehearing Order"). These utilities now comprise the MISO South subregion.[10] *Id.*

## II. Transfer Capability Between MISO Subregions

MISO has limited ability, both physically and contractually, to transfer power between MISO Midwest and MISO South. The MISO South subregion is connected to MISO Midwest by a high-voltage interconnection location in Missouri shared by Ameren Corporation ("Ameren"), Associated Electric Cooperative, Inc. ("AECI"), and Entergy Arkansas, Inc. ("Entergy Arkansas"), an operating utility subsidiary of Entergy Corporation ("Entergy"). *See Midwest Indep. Transmission Sys. Operator, Inc.* 136 FERC ¶ 61,010 PP 1-3 (July 1, 2011). Pursuant to a transmission contract, each utility has rights to use 500 megawatts ("MW") of firm transmission across the line that interconnects MISO South and MISO Midwest. *Id.* P3. Ameren and Entergy Arkansas are MISO-transmission owning members; AECI is not part of MISO. Therefore, of the total

[10] The MISO South region includes the Entergy Operating Companies, Cleco Corporation, Lafayette Utilities System, Louisiana Energy and Power Authority, Louisiana Generating, South Mississippi Electric Power Association, and East Texas Electric Cooperative.

contractual capability of the 1,500 MW, MISO has operational control to use only Ameren and Entergy Arkansas's shares – 1,000 MW. *Id.* P 3.

After MISO integrated the South subregion, it began transmitting electricity (through SPP and other transmission systems) between MISO Midwest and MISO South in excess of the 1,000 MW limit. MISO believed Section 5.2 of the Joint Agreement between MISO and SPP (the "RTOs") allowed for unlimited use of the interconnections between the two RTOs. SPP and other non-MISO member utilities disagreed and filed a complaint at FERC to prevent MISO from taking this action. The complaint was settled between MISO, SPP, and certain neighboring utilities collectively known as "the Joint Parties."[11] The settlement, approved by FERC in 2016, *Midcontinent Indep. Sys. Operator, Inc.*, 154 FERC ¶ 61,021 (Jan. 21, 2016), contractually set MISO's direct capacity path between MISO South and Midwest at the physical limit of 1,000 MW. The settlement also allowed MISO, in exchange for compensation, to use capacity on SPP's and the Joint

[11] The Joint Parties are Associated Electric Cooperative, Inc., Gulf Power Company, Alabama Power Company, Georgia Power Company, Mississippi Power Company by and through their agent Southern Company Services, Inc., the Tennessee Valley Authority, Louisville Gas and Electric Company, Kentucky Utilities Company, and PowerSouth Energy Cooperative.

Parties' transmission systems, as-available, up to 3,000 MW in the MISO Midwest-to-South direction and 2,500 MW in the MISO South-to-Midwest direction. *See* Further Consideration Order P 66 n.270 (recognizing these contractual transfer limits).

## III. MVP Subregional Cost Allocation

In 2019, MISO began planning for comprehensive transmission construction of Multi-Value Projects ("MVPs") to transmit electricity from wind generators forecasted to be constructed in twenty years. MISO estimated a total cost of $100 billion. An MVP is one or more high-voltage transmission facilities in MISO that address a common set of transmission issues and meet a variety of criteria set forth in the MISO Tariff. 2022 Initial MVP Order PP 2-3. In 2022, FERC approved revisions to MISO's Tariff that created a subregional cost allocation option for MVPs. *Id.* P 1. Before the subregional cost allocation option, MISO allocated 100% of the costs of MVPs to all customers across the entire MISO footprint. *Id.* P 4. This legacy cost allocation was accepted before integration of the MISO South subregion. *Midwest Indep. Transmission Sys. Operator, Inc.*, 133 FERC ¶ 61,221 P 1 (Dec. 16, 2010) ("2010 MVP Order"), *order on reh'g*, 137 FERC ¶ 61,074 (Oct. 21, 2011), *aff'd sub nom. Ill. Com. Comm'n v. FERC*, 721 F.3d 764

(7th Cir. 2013). MISO has never approved a portfolio of MVP projects in MISO South or across the MISO Midwest-South border.

With its larger footprint, MISO hired the Brattle Group – an economic and regulatory consultant in the energy industry – to perform a benefit distribution analysis ("Brattle Analysis") evaluating whether the limited transmission lines connecting MISO Midwest and South would prevent MISO South customers from materially benefitting from the construction of high-voltage lines in MISO Midwest. 2022 Initial MVP Order P 21. The Brattle Analysis concluded, and FERC agreed, that MVPs located entirely in one subregion would not meaningfully benefit the other subregion:

> [T]o the extent that the benefits of new MVP Portfolios located entirely within the Midwest Subregion accrue broadly to the zones within the Midwest Subregion and with very few benefits accruing to the South Subregion (and vice versa), cost allocation based on a MISO-wide postage stamp rate would fail to satisfy the requirement that costs be allocated in a manner that is at least roughly commensurate with the estimated benefits.

*Id.* at 69 (internal quotations omitted).

The Brattle Group simulated the Adjusted Production Cost ("APC") benefits[12] that would result from a 10% increase in transmission capacity on all 345 kV and above transmission facilities in the Midwest subregion by 2040. *See* 2022 MVP Rehearing Order P 41. The Brattle Group found that the increase in MISO Midwest transmission capacity would create approximately $23.3 million in annual APC savings in that subregion but would cause negative $0.9 million in APC savings annually in MISO South. *See id.* The Brattle Analysis also evaluated how a portfolio of MVP projects that was approved by MISO in 2011 would have impacted the MISO South subregion if MISO South had been integrated when the projects were approved. 2022 Initial MVP Order P 21. The Brattle Analysis concluded that, if the total cost of the 2011 MVP portfolio was allocated on a system-wide basis in MISO's current footprint, "the South Subregion would pay for approximately 28% of MVP costs while receiving only 5% of MVP benefits due to transfer limits between the Subregions." *Id.*

---

[12] The APC methodology measures the costs associated with serving customers. When companies within MISO can dispatch lower-cost generation, purchase cheaper energy from within the system, or sell excess generation to neighboring companies, it results in a reduction of APC. Increased transmission capacity can affect APC by alleviating transmission constraints that allow MISO market participants to access lower-cost generation.

Based on the Brattle Analysis results, on February 4, 2022, MISO filed at FERC to prevent the allocation of costs between subregions. In other words, utilities that built high voltage transmission in MISO Midwest would not recover any of the costs from MISO South, and vice versa. FERC accepted the filing on May 18, 2022. *See* 2022 Initial MVP Order.

## IV. The JTIQ Framework

### A. JTIQ Portfolio #1

The RTOs are responsible for timely interconnecting generation resources to the transmission systems they operate. *See Tenn. Power Co.*, 90 FERC ¶ 61,238, 61,761 (Mar. 15, 2000) (identifying interconnection as an element of transmission service that is required to be provided under a public utilities' Open Access Transmission Tariff). Generators seeking to interconnect must file a request with the relevant RTO and are then placed in an interconnection queue. The RTOs have seen "unprecedented" levels of generator interconnection requests in recent years.[13] The increase in interconnection requests in MISO Midwest has led to significant interconnection delays, and these delays have been exacerbated by

[13] *See* R.21:2.

transmission limitations along the MISO-SPP seam.[14] The RTOs determined that, due to these transmission limitations, "interconnecting new generation along the SPP-MISO seam is increasingly difficult" and the necessary transmission upgrades are "typically too costly for interconnection projects to proceed."[15]

MISO and SPP collaborated on a JTIQ study to identify "key [transmission] projects to enable generator interconnections at the seams and evaluat[e] the economic and reliability benefits these projects could provide to customers within the RTOs."[16] The JTIQ study "evaluated 59 projects submitted by stakeholder groups, SPP, or MISO, and 16 portfolio combinations of these projects.[17] Importantly, these projects were all located in the MISO Midwest region.[18]

The RTOs analyzed the economic, reliability, and interconnection timing impact of these proposed projects and published their final JTIQ Study Report in March 2022, which identified seven JTIQ transmission

---

[14] *See* R.21:6.
[15] *Id.*
[16] *Id.*
[17] *See* R.21:7.
[18] R.140:20 ("Given that all MISO JTIQ Upgrades included in JTIQ Portfolio #1 will be physically located in the MISO Midwest Subregion…").

projects for potential construction.[19] The RTOs later refined their proposal to five high-voltage (345 kilovolt ("kV")) transmission projects along the MISO-SPP seam ("JTIQ Portfolio #1").[20] These projects are intended to benefit interconnecting generators by reducing their cost of interconnecting and streamlining interconnection study processes.[21]

### B. Cost Allocation

The RTOs estimate JTIQ Portfolio #1 will cost approximately $1.7 billion.[22] Unlike traditional investment in generator interconnection, the RTOs proposed that JTIQ Portfolio #1 be built before any generation developers contract to pay the costs.[23] MISO planned to recover the capital costs through a "JTIQ Generator Charge" to be collected from generators that subscribe to interconnect to a JTIQ Portfolio #1 project.[24] And, until sufficient generation developers commit, MISO retail customers would be obliged to reimburse the transmission owning utilities responsible for building JTIQ Portfolio #1 (backstop funding).[25] A portion of the forecasted

---

[19] *See* R.21:4, 7.
[20] *See* R.21:4; *see also* R.21:9 (listing the JTIQ Portfolio #1 projects).
[21] *See* R.21:8.
[22] *See* R.21:4.
[23] *See* R.21:22.
[24] *See* R.21:20-21.
[25] *See* R.21:21-22.

construction cost was to be offset by a $464.5 million grant from the United States Department of Energy ("DOE"), offsetting approximately 25% of the portfolio's capital costs.[26] This backstop funding could be short term, for the period necessary to secure commitments from generator developers, or permanent if sufficient generators fail to interconnect.[27]

MISO proposed to recover backstop funding for JTIQ Portfolio #1 (located wholly in MISO Midwest) from customers across the ***entire*** MISO system – including Mississippi and Arkansas.[28] MISO made this blanket proposal notwithstanding its earlier filing to limit cost recovery of high-voltage MVP projects to the subregion where the projects were built and despite recognizing JTIQ Portfolio #1 will be built entirely in MISO Midwest.[29] MISO claimed that there was "no basis" for limiting backstop cost recovery to just MISO Midwest customers.[30]

---

[26] *See* R.21:11.
[27] *See* R.21:17, 30.
[28] *See* R.21:22.
[29] *See id.*
[30] *Id.*

## V. Procedural History of the JTIQ Framework

In August 2024, MISO filed with FERC revisions to the MISO Tariff and the Joint Agreement to implement the JTIQ framework.[31] SPP filed revisions to the SPP Tariff and Joint Agreement for the same purpose.[32]

Mississippi filed a limited protest of MISO's Tariff revisions, and Arkansas filed comments.[33] In these submissions, Petitioners did not oppose construction of JTIQ Portfolio #1.[34] Instead, they urged FERC to reject MISO's proposal to allocate JTIQ Portfolio #1 backstop costs to the MISO South subregion for two reasons. First, Petitioners argued MISO's proposal violated FERC's cost-causation principle, which requires that the cost of transmission facilities be allocated to beneficiaries in a manner that is at least roughly commensurate with estimated benefits.[35]

---

[31] *See* R.1; R.21.
[32] *See* R.2; R.17.
[33] *See* R.136; R.137.
[34] *See* R.136:1; R.137:5.
[35] *See e.g.*, R.137:4 ("MISO must show that MISO South will benefit from JTIQ Portfolio #1 before allocating any cost to MISO South [customers]."); *see also Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051, P 622 (July 21, 2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g and clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (Oct. 18, 2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) ("Order No. 1000") (describing the cost causation principle).

Second, they argued that MISO's proposal violated FERC precedent because it allocated JTIQ Portfolio #1 costs to MISO South customers despite a prior FERC finding that high-voltage transmission lines located in the MISO Midwest subregion do not meaningfully benefit MISO South.[36]

MISO answered Petitioners' limited protest and comments, arguing that MISO South will benefit from JTIQ Portfolio #1 because it will "provide access to much needed renewable generation that will lower market costs" across both Subregions.[37] MISO also argued that MISO South could benefit from JTIQ Portfolio #1 because it may reduce market-to-market ("M2M") payments made by MISO to SPP.[38] MISO and SPP pay each other M2M payments "to alleviate congestion at or near the seam between their footprints."[39] According to MISO, it collects M2M payments from customers on a system-wide basis (including MISO South), and JTIQ Portfolio #1 could reduce those payments by decreasing congestion at the seam.[40]

---

[36] *See, e.g.,* R.137:3-4.
[37] *See* R.140:22.
[38] *See* R.140:22-23.
[39] *See* R.140:22.
[40] *See* R.140:22-23.

Petitioners responded by identifying flaws in MISO's arguments.[41] Specifically, Petitioners argued that, to the extent JTIQ Portfolio #1 will benefit MISO South in any way, those incidental benefits "are too small and imprecise to justify allocating any backstop funding of JTIQ Portfolio #1 to MISO South load."[42] Additionally, Petitioners explained that MISO offered no evidence that JTIQ Portfolio #1 would cause a net decrease to MISO South's M2M payments by reducing congestion at the RTO's seam.[43]

On November 13, 2024, FERC accepted the JTIQ framework proposed by MISO and SPP. *See* November 13 Order. FERC found that "the entirety of MISO, including MISO South, will benefit to some degree" from JTIQ Portfolio #1. *Id.* P 203. FERC stated that, because the MISO Tariff allocates 10% of the capital costs of high-voltage (345 kV) generator interconnection facilities to customers across the entire MISO region, JTIQ Portfolio #1 will "provide sufficient benefits to regional [customers] to warrant allocation of some share of costs to [those customers]." *Id.* In a conclusory attempt to distinguish its MVP subregional cost allocation precedent, FERC stated that

[41] *See* R.123.
[42] *See* R.123:3.
[43] *See* R.123:4.

"MISO provided analysis in that proceeding assessing benefits of a portfolio of sub-regional MVP projects, not JTIQ Portfolio #1." *Id.*

Petitioners filed for rehearing,[44] which was denied. *See* Further Consideration Order P 2. FERC issued the Further Consideration Order upholding the November 13 Order and addressing arguments made by Petitioners in their rehearing request. FERC found that "the RTOs provided substantial evidence … to support system-wide allocation of backstop funding for JTIQ Portfolio #1, despite the transfer limit to MISO South." *Id.* P 59. Addressing its MVP subregional cost allocation precedent, FERC found that "changed circumstances and/or increased transfer capability between subregions are not necessary to justify the backstop allocation of JTIQ Portfolio #1 costs to MISO South." *Id.* P 68.

Petitioners brought this petition for review pursuant to 16 U.S.C. § 825*l*(b) to prevent unjust and unreasonable wholesale electricity rates from being passed on to retail customers in Mississippi and Arkansas.

[44] *See* R.149.

## SUMMARY OF THE ARGUMENT

FERC's decision to allocate backstop costs of JTIQ Portfolio #1 to customers across the entire MISO system was erroneous for three reasons.

***First***, FERC violated the FPA and APA by failing to establish with substantial evidence that JTIQ Portfolio #1 will benefit MISO South customers. FERC's conclusion that MISO South customers will benefit from JTIQ Portfolio #1 is speculative, conclusory, unsupported by evidence, and in conflict with the agency's past factual findings.

***Second***, FERC's orders are arbitrary and capricious because they deviate from well-settled FERC precedent without a reasoned explanation. FERC found previously that new transmission facilities in MISO Midwest do not meaningfully benefit MISO South customers because of contractual transfer limits between the subregions. 2022 Initial MVP Order P 69. Despite acknowledging these transfer limits still exist, FERC deviated from its precedent by finding MISO South customers will receive minor and incidental benefits from JTIQ Portfolio #1, which is located entirely in MISO Midwest. Further Consideration Order P 59. FERC failed to rationally distinguish its precedent holding that MISO South does not benefit from transmission projects like JTIQ Portfolio #1.

***Third***, FERC's orders violate its long-standing cost-causation principle. Under this principle, FERC cannot allocate any cost of a transmission project to a party that does not benefit from it. Order No. 1000 P 637; *Ill. Com. Comm'n v. FERC,* 576 F.3d 470, 476 (7th Cir. 2009). If a party does benefit from a transmission project, any allocation of cost must be at least roughly commensurate with the benefits received. Order No. 1000 P 622. Because MISO South customers will not benefit from JTIQ Portfolio #1, FERC cannot allocate backstop costs to them.

Even assuming MISO South customers would receive unquantified incidental benefits, there is no record evidence quantifying such supposed benefits, which precludes FERC from finding that they would be roughly commensurate with the substantial backstop costs that may be imposed on MISO South customers. *See Ill. Com. Comm'n*, 576 F.3d at 477 (holding that if FERC cannot quantify benefits, the cost causation principle requires FERC to have an articulable and plausible reason to believe that benefits are at least roughly commensurate with costs).

## STANDARD OF REVIEW

FERC's orders are reviewed under the APA. *See El. Paso Elec. Co. v. FERC*, 832 F.3d 495, 503 (5th Cir. 2016) (citing *La. Pub. Serv. Comm'n v.*

*FERC*, 771 F.3d 903, 909 (5th Cir. 2014)). Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). FERC acts arbitrarily when it fails to articulate "a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). For example, an agency action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

The APA requires an agency to support its findings with substantial evidence. 5 U.S.C. § 706(2)(E). The FPA similarly requires FERC's findings of fact to be supported by "substantial evidence." 16 U.S.C. § 825*l*(b). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence"

to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla." *Id.* at 103 (quoting *Consol. Edison*, 305 U.S. at 229). It means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison,* 305 U.S. at 229).

## ARGUMENT

### I. FERC Failed to Establish with Substantial Evidence that JTIQ Portfolio #1 Will Benefit MISO South Customers.

The APA requires more from agencies than mere assumptions, hypotheses, and guesses — it requires reasonable conclusions based on facts or other record evidence. *Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*, 893 F.3d 1017, 1027 (7th Cir. 2018) (noting that "[c]ourts . . . extend no deference to agency decisions that lack record support or explanation" and rejecting agency finding as "little more than administrative *ipse dixit*"). Though "an agency's predictive judgments" are entitled to deference, *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 541 (D.C. Cir. 2009), such "judgment[s] must be based on some logic and evidence, not sheer speculation." *Verizon v. FCC*, 740 F.3d 623, 663 (D.C. Cir. 2014) (Silberman,

J., concurring in part and dissenting in part). An agency cannot rely on "abstract speculation that has no foundation in the record of the case before it" to support its factual conclusions. *Ariz. Pub. Serv. Co. v. United States*, 742 F.2d 644, 655 (D.C. Cir. 1984).

Here, FERC, without record support, found that MISO South customers will receive "minor and incidental benefits" from JTIQ Portfolio #1 attributable to:

> increased transmission system robustness, more timely interconnection of new generation capacity that enables lower production cost generation to access the entire MISO market, including MISO South (resulting in region-wide Adjusted Production Cost savings), as well as less congestion at the MISO-SPP seam, which could potentially reduce MISO-wide congestion payments to SPP.

Further Consideration Order P 59.

FERC relied on irrelevant MISO Tariff language to support backstop cost allocation to MISO South customers. MISO currently allocates 10% of high-voltage (345 kV and above) interconnection-related network upgrade costs to customers across its entire system. *See id.* PP 18, 61. FERC concluded that this system-wide cost allocation supports a finding that interconnection-related transmission upgrades – no matter where they are located in MISO – benefit MISO South customers. *Id.* P 61.

FERC's factual findings are conclusory, speculative, unsupported by record evidence, and inconsistent with the record and the agency's past findings. First, FERC relied on an analysis that is not in the record and does not demonstrate that MISO South would benefit from JTIQ Portfolio #1. FERC relied on an SPP Study presented at a SPP stakeholder meeting, the Cost Allocation Working Group ("CAWG"), in October 2023 ("CAWG Analysis"). *See, e.g., id.* P 64 n.263. The CAWG Analysis found that JTIQ Portfolio #1 would provide MISO customers in general with net present value APC benefits of $76.5 million over twenty years, along with qualitative benefits such as enhanced resiliency and reliability at the MISO-SPP seam, increased transmission system robustness, and timelier interconnection of new generation. *See id.* P 64.

But notably, as FERC acknowledged, the CAWG Analysis ***did not*** conclude that MISO South would receive these APC or qualitative benefits. *See id.* P 62. FERC dismissed this critical issue in conclusory fashion, stating that "MISO South should receive the same benefits (e.g., Adjusted Production Cost savings, faster interconnection of new resources, and a more robust transmission system) as the rest of MISO, up to the contractual transfer limits." *Id*. But this assertion is contradicted by FERC's previous

finding, based on the Brattle Study and testimony from MISO, that increasing 345 kV transmission capacity in MISO Midwest (*e.g.*, JTIQ Portfolio #1) will ***increase*** costs in MISO South, not decrease them. 2022 MVP Rehearing Order P 41. Nor did the CAWG Analysis conclude that the alleged qualitative benefits of JTIQ Portfolio #1 will benefit MISO South. Instead, FERC merely listed general, unquantifiable, and potential benefits that the RTOs claim ***may*** arise from the projects and mistakenly assumed they would benefit MISO South. *See* Further Consideration Order P 64.

SPP's CAWG Analysis ***was not in the record*** before the agency. While the RTOs described the conclusions in the CAWG Analysis and cited to it in various filings,[45] the CAWG Analysis was never submitted into the record for FERC's review. FERC therefore violated the substantial evidence standard by contradicting its past factual findings and misrelying on evidence outside the record to support its conclusion. *See N. States Power Co. v. FERC*, 30 F.3d 177, 180 (D.C. Cir. 1994) ("[FERC] must be able to demonstrate that it has 'made a reasoned decision ***based upon substantial***

---

[45] *See* R.1:33; R.2:40.

***evidence in the record***.'") (emphasis added) (quoting *Town of Norwood v. FERC*, 962 F.2d 20, 22 (D.C. Cir. 1992)).

Second, FERC's finding that JTIQ Portfolio #1 "could potentially" reduce net M2M payments from MISO to SPP is speculative. FERC ***acknowledges*** as much, stating that "it is premature to state with certainty that MISO (as opposed to SPP) will be the net beneficiary of the reduction in market-to-market congestion payments attributable to JTIQ Portfolio #1." Further Consideration Order P 60. Instead of dismissing this speculative benefit, FERC claims it supports backstop cost allocation system-wide because "if MISO makes no payments to SPP, then the benefit of not having to make any congestion payments would also accrue to the entire MISO [system]." *Id.*

FERC's reasoning is erroneous. While there is evidence that JTIQ Portfolio #1 will reduce congestion at the seam, there is ***no*** evidence that the projects will cause a net-decrease in MISO customers' M2M payments. Similarly, there is no evidence that JTIQ Portfolio #1 will altogether eliminate MISO customers' M2M payments to SPP. And as FERC itself acknowledged, it is unclear how JTIQ Portfolio #1 will affect M2M payments between the RTOs. *Id.* It is therefore purely speculative to find

that JTIQ Portfolio #1 will benefit MISO South by decreasing its customers' M2M payments.

Third, FERC's reliance on MISO's high-voltage generator interconnection-related network upgrade cost allocation rules is nothing more than "administrative *ipse dixit*." *Orchard Hill*, 893 F.3d at 1027. Petitioners explained on rehearing that FERC accepted MISO's high-voltage interconnection network upgrade cost allocation methodology ***before*** integration of the MISO South subregion.[46] FERC has therefore never evaluated or determined whether customers in MISO South benefit from high-voltage interconnection-related network upgrades in MISO Midwest. There is no study and no record evidence that these transmission projects in MISO Midwest benefit MISO South customers.

For all these reasons, FERC's determination that MISO South customers will receive "minor and incidental benefits" from JTIQ Portfolio #1 is not based on substantial evidence; it is conclusory, speculative, and inconsistent with the record and FERC's past findings.

---

[46] *See* R.149:5.

## II. FERC Deviated from Its Precedent Without a Reasoned Explanation by Finding that JTIQ Portfolio #1 Benefits MISO South Customers.

An agency may not depart from its precedent without providing a reasoned explanation. *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009) (under the APA, an agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."). An unexplained inconsistency in agency action is a hallmark of arbitrary and capricious decision-making under the APA. *See, e.g.*, *Fred Bevs., Inc. v. Fred's Cap. Mgmt. Co.*, 605 F.3d 963, 967 (Fed. Cir. 2010) (holding the Trademark Trial and Appeal Board acted arbitrarily by denying leave when "[t]here [was] no basis on which to distinguish the circumstances of the present case from those in which" leave was granted).

In 2022, FERC found that MVPs located in MISO Midwest would not meaningfully benefit MISO South because of transfer limits between the subregions. 2022 Initial MVP Order P 69. According to the Brattle Analysis, use of a "MISO-wide postage stamp rate would fail to satisfy the requirement that costs be allocated in a manner that is at least roughly commensurate with the estimated benefits." *Id.* (internal quotations omitted). In fact, the Brattle Analysis found that increased transmission

capacity in MISO Midwest would negatively impact MISO South. *Id.* (explaining that if MISO increased the transmission capacity of 345 kV lines in MISO Midwest by 10% by 2040, MISO South would see an annual impact of ***negative $0.9 million*** in APC benefits; that is, an increase in costs). The Brattle Analysis found, and FERC agreed, that if MISO's prior MVP portfolio – located entirely in MISO Midwest – was cost allocated across the entire existing MISO region, MISO South would have paid 28% of the costs while receiving only 5% of the benefits. *Id.* Based on these findings, FERC determined MVPs (i.e., high-voltage transmission upgrades) in MISO Midwest will not meaningfully benefit – and may even harm – MISO South. *Id.*

Despite acknowledging that transfer limits between the subregions have not changed since 2022, Further Consideration Order P 64, FERC attempted to distinguish its MVP subregional cost allocation precedent on rehearing. *See id.* at 63-68. But FERC did not provide a rational basis for departing from its precedent.

FERC concedes that transfer limitations would prevent some of the benefits of high-voltage transmission in one subregion from reaching the other. *See id.* at 65. But FERC claims the Brattle Analysis and related

testimony support a finding "that various other benefits ***would not*** be affected by the transfer limits and would accrue to both subregions." *See id.* This argument is a red herring.

The Brattle Analysis concluded that, despite the transfer limits, MISO South benefitted from ***participating in the MISO system***. *See id.* (explaining the Brattle Group's finding that MISO South benefits "from being part of the regional MISO market and its security-constrained optimal unit commitment and economic dispatch, efficient management of congestion related to existing transmission limits, and the liquidity and transparency of MISO's day-ahead energy, real-time energy, and ancillary services markets."). That benefit is tied to participation in a centralized energy market, not incremental investment in transmission facilities.

The Brattle Analysis did ***not*** find MISO South would incrementally benefit from improved transmission capacity in MISO Midwest. To the contrary, the Brattle Group found that increasing 345 kV transmission capacity in MISO Midwest would increase energy costs in MISO South. 2022 Initial MVP Order P 69. FERC's precedent directly contradicts a finding that MISO South would incrementally benefit from new high-voltage transmission facilities in MISO Midwest.

FERC then attempts to distinguish its precedent by arguing that JTIQ Portfolio #1 is distinct from MVPs because the portfolio will "expedite the interconnection of generating facilities, provide [APC] savings, increase transmission system robustness, and also reduce congestion at the seam, which should reduce overall market-to-market congestion-related payments." Further Consideration Order P 66. However, this is not a rational distinction because MISO created the MVP category to achieve the same or similar purposes. For example, FERC accepted the MVP rate design after finding that MVPs will increase access to low-cost renewable generation and therefore decrease production costs. 2010 MVP Order P 383 ("MVPs will produce benefits by allowing [customers] to satisfy documented energy policy mandates or laws (e.g., ***enabling an increased reliance on renewable resources***) that are not necessarily associated with peak demand periods and by producing economic benefits (e.g., ***reducing production costs***) that occur throughout the year.") (emphasis added).

FERC also recognized that MVPs would increase transmission robustness and provide reliability benefits. *Id.* P 202. And while MVPs are not required to resolve seams issues, MISO has used the MVP designation to approve projects in similar locations to JTIQ Portfolio #1.

"That which we call a rose By any other name …."[47] - - JTIQ Portfolio #1 transmission projects and the MVPs built to date are both high voltage transmission lines built in MISO Midwest to benefit MISO Midwest customers. There is no material difference in the types of benefits provided by JTIQ Portfolio #1 and MVPs, and FERC previously determined these types of benefits do not meaningfully flow to MISO South when the transmission upgrade is in MISO Midwest because the flow of energy between the two subregions is restricted.

Because FERC has found that MISO South does not benefit from transmission portfolios like JTIQ Portfolio #1, its precedent prohibits it from allocating backstop costs to MISO South. *See Fred Beverages*, 605 F.3d at 967 ("Where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious.").

[47] William Shakespeare, *Romeo and Juliet*, act II, sc. 2.

### III. FERC Violated Its Long-Standing Cost Causation Principle by Allocating Backstop Costs of JTIQ Portfolio #1 to MISO South Customers.

The FPA vests FERC with jurisdiction over facilities that transmit electricity in interstate commerce. *See* 16 U.S.C. § 824(b)(1); 42 U.S.C. § 7172(a)(1)(B). Under the FPA, electric utilities must charge "just and reasonable" rates. 16 U.S.C. § 824d(a). For decades, FERC and courts "have understood this requirement to incorporate a 'cost-causation principle'—the rates charged for electricity should reflect the costs of providing it." *Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254, 1255 (D.C. Cir. 2018). The cost-causation principle "'adds flesh to the bare statutory bones' of the just-and-reasonable-rate requirement." *Id.* at 1255-56 (quoting *K N Energy, Inc. v. FERC*, 968 F.2d 1295, 1300 (D.C. Cir. 1992)). "FERC need not 'utilize a particular formula' when applying this principle, nor 'allocate costs with exacting precision.'" *El. Paso Elec. Co. v. FERC*, 76 F.4th 352, 357 (5th Cir. 2023) (quoting *Old Dominion*, 898 F.3d at 1260). However, FERC may not "approve unjust and unreasonable rates by allocating costs to those who reap little to no benefit." *Id.* at 362.

FERC promulgated a transmission planning and cost allocation rule, known as Order No. 1000, that reaffirms this principle for transmission cost

allocation. Order No 1000 P 623 ("[R]equiring a beneficiaries pay cost allocation method or methods is fully consistent with the cost causation principle as recognized by the Commission and the courts."). Order No. 1000 requires that, for regional transmission cost allocation, "[t]hose that receive no benefit from transmission facilities, either at present or in a likely future scenario, must not be involuntarily allocated any of the costs of those transmission facilities." Order No. 1000 P 637. Those that benefit from the transmission facilities must be allocated costs "in a manner that is at least roughly commensurate with estimated benefits." Order No. 1000 P 622.

As explained above, FERC has not supported with substantial evidence a finding that JTIQ Portfolio #1 will benefit MISO South. Even if MISO South would receive some unquantified incidental benefit, FERC cannot allocate costs to a party that will receive such an insignificant benefit from a transmission facility. *See El. Paso Elec.*, 76 F.4th at 362 (prohibiting cost allocation to a party receiving "***little to no benefit***") (emphasis added). It is not plausible that an unquantified incidental benefit is "roughly commensurate" with the cost of backstop funding for JTIQ Portfolio #1. *Ill. Com. Comm'n*, 576 F.3d at 477 (requiring FERC to have "an

articulable and plausible reason to believe that the [unquantified] benefits are at least roughly commensurate" with costs). After subtracting the DOE grant, JTIQ Portfolio #1 is expected to cost approximately $1.3 billion.[48]

Under MISO's proposal, MISO South customers may be responsible for hundreds of millions of dollars in JTIQ Portfolio #1 capital costs, depending on the level of generator subscription to the projects. Although FERC argues that MISO South is "highly unlikely" to be allocated permanent backstop funding for JTIQ Portfolio #1, *see* Further Consideration Order PP 67-68, the amount of permanent backstop funding that MISO South customers will owe for JTIQ Portfolio #1 will not be clear for years and could be substantial. *See id.* P 16 (explaining the subscription period for JTIQ Portfolio #1 is twenty years from the in-service date of the first project in JTIQ Portfolio #1).

Recent activities have greatly increased the risk to MISO South customers. With enactment of the One Big Beautiful Bill Act that accelerates the expiration of federal investment and production tax credits

[48] *See* R.21:12.

for clean energy,[49] MISO has estimated a reduction in future renewable energy generation.[50] Combine this reduction with DOE's termination of the grant supporting JTIQ Portfolio #1[51] and substantial withdrawals of renewable generation from MISO's interconnection queue,[52] the potential for substantial costs far outweighs any incidental benefits to MISO South customers, if such benefits even exist. FERC therefore violated the FPA by failing to support with record evidence its finding that the cost of JTIQ Portfolio #1 backstop funding is roughly commensurate with the benefits MISO South customers will receive.

## CONCLUSION

For the foregoing reasons, FERC's orders violate the FPA and APA by allocating the backstop costs of JTIQ Portfolio #1 to MISO South customers who do not benefit from the projects. If the challenged orders

---

[49] *See* One Big Beautiful Bill Act, Pub. L. No. 119-21, § 70512, 139 Stat. 72, 252 (2025); One Big Beautiful Bill Act, Pub. L. No. 119-21, § 70513, 139 Stat. 72, 270 (2025).

[50] *See* Amanda Durish Cook, *MISO Cuts Renewable Estimates in Tx Planning Scenarios*, RTO Insider (Sep. 24, 2025), https://www.rtoinsider.com/115667-miso-cuts-renewable-estimates-tx-planning-scenarios/#/.

[51] *See* John Cropley & Tom Kleckner, *DOE Terminates $7.56B in Energy Grants for Projects in Blue States*, RTO Insider (Oct. 7, 2025), https://www.rtoinsider.com/116314-doe-terminates-756b-energy-grants-blue-states/.

[52] Amanda Durish Cook, *MISO Interconnection Queue Drops to 215 GW on Tax Incentive Phaseout*, RTO Insider (Sep. 17, 2025), https://www.rtoinsider.com/115081-miso-interconnection-queue-drops-to-215gw-tax-incentive-phaseout/.

remain in place, Petitioners will be unable to prevent unjust and unreasonable wholesale electricity rates from being passed on to the retail customers under their jurisdiction. If this Petition is rejected, retail electric customers will see an increase in their bills without any resulting benefit.

Therefore, the Court should vacate the orders under review and remand with instructions that FERC direct MISO to amend its Tariff to remove the allocation of JTIQ Portfolio #1 backstop costs to MISO South customers. Alternatively, Petitioners respectfully request that the Court reverse the orders under review.

Respectfully submitted,

*/s/ William D. Booth*
William D. Booth
Alex L. Peterson
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Avenue SW, Ste. 400
Washington, DC 20024
*Counsel for Mississippi Public Service Commission*

*/s/ Bridgette M. Frazier*
Bridgette M. Frazier
Arkansas Public Service Commission
1000 Center St.
Little Rock, AR 72201
Bridgette.Frazier@arkansas.gov
*Counsel for Arkansas Public Service Commission*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 17, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ William D. Booth*
William D. Booth
Attorney for Petitioner Mississippi
Public Service Commission

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and Circuit Rule 32.1: this document contains 7,096 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and Circuit Rule 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word 2025 in 14-point font Book Antiqua.

*/s/ William D. Booth*
William D. Booth
Attorney for Petitioner Mississippi
Public Service Commission

Dated: October 17, 2025